IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LARRY E. E.,

    Plaintiff,

v.                                                              Civ. No. 24-732 GBW

FRANK BISIGNANO,
*Commissioner of the Social Security
Administration*[1],

    Defendant.

## ORDER DENYING REMAND

THIS MATTER comes before the Court on Plaintiff's Memorandum in Support of Reversal and Remand. *Doc. 12*. For the reasons explained below, the Court DENIES Plaintiff's Motion and AFFRIMS the judgment of the SSA.

**I.**     **PROCEDURAL HISTORY**

Plaintiff filed an initial application for Social Security Disability Insurance ("SSDI") on February 18, 2022, alleging disability beginning January 29, 2020. Administrative Record ("AR") at 216-19. Plaintiff's application was denied on initial review on May 6, 2022, *id*. at 85-89, and again on reconsideration on January 19, 2023, *id*. at 107-11. On November 21, 2023, a hearing was held by an Administrative Law Judge

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Acting Commissioner Leland Dudek as the defendant in this suit.

1

("ALJ"). *Id*. at 31-60.  The ALJ issued an unfavorable decision on December 15, 2023.  *Id*. at 14-24.  Plaintiff sought review from the Social Security Administration's ("SSA") Appeals Council, which denied review on May 14, 2024, *id*. at 1-3, making the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On July 17, 2024, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision.  *Doc. 1*.  On December 16, 2024, Plaintiff filed the instant Motion.  *Doc. 12*.  Defendant responded on March 14, 2025.  *Doc. 21*.  Briefing on the Motion was complete on April 10, 2025, *doc. 25*, with the filing of Plaintiff's reply, *doc. 24*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*, 933 F.2d at 800 (internal quotation marks omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

2

discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ relied is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

### III. ALJ EVALUATION

#### A. Legal Standard

For purposes of Social Security Disability Insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."  *Id.* § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations."  *Id.* § 404.1545(a)(1).  Second, the ALJ determines the physical and mental demands of the claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)).  Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands.  *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in

4

the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On December 15, 2023, the ALJ issued his decision denying Plaintiff's application for SSDI benefits. AR at 14. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since January 29, 2020, the alleged onset date." *Id*. at 19. At step two, he found that Plaintiff has the following severe impairments: "atherosclerosis of native coronary artery of native heart without angina pectoris; essential hypertension; hyperlipidemia, obesity; and paroxysmal atrial fibrillation." *Id*. At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not equal the severity of an impairment in the Listings. *Id*. at 19-20.

At step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with several physical limitations. *Id*. at 20. Specifically, the ALJ found that Plaintiff is capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. *Id*. The ALJ further found that Plaintiff is limited to frequently climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; frequently balancing, stooping, kneeling, crouching, and crawling; and

frequently being exposed to unprotected heights, dangerous machinery, and moving machinery. *Id*.

In reaching these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. at 21. Based on the RFC assessment, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a restaurant manager (Dictionary of Occupational Titles ("DOT") #182.167-106), operation manager (DOT #185.117-014), and management trainee (DOT #189.167-018). *Id*. at 23-24. Accordingly, the ALJ found that Plaintiff is not disabled and did not proceed to step five of the sequential evaluation process. *Id*. at 24.

## IV. ANALYSIS

Plaintiff moves the Court to reverse and remand the ALJ's decision because it is not supported by substantial evidence. *Doc. 12* at 7-13. Specifically, Plaintiff contends that the ALJ failed to consider an entire line of evidence regarding Plaintiff's lower back impairment and instead relied on stale opinions from the agency's reviewing physicians, rendering the RFC unsupported by substantial evidence and inconsistent with the relevant legal standards. *Id*. Defendant disputes these arguments. *Doc. 21*. For the reasons explained below, the Court agrees with Defendant.

### A. Plaintiff's Medical History

Plaintiff's primary argument is that the state agency reviewing physicians and the ALJ failed to consider Plaintiff's 2016 lumbar MRI, which documented degeneration of the L4-5 and L5-S1 discs, a small broad-based central disc protrusion at L5-S1, multilevel facet arthropathy resulting in bilateral neuroforaminal narrowing at L5-S1 (without central spinal stenosis), and a distended urinary bladder. AR at 674-75. The MRI was performed after an episode of acute back pain triggered by Plaintiff lifting heavy objects, against the backdrop of a prior back injury he sustained decades earlier. *Id*. at 624. A brief discussion of Plaintiff's medical history is warranted at the outset, both to provide relevant background and to illustrate why the ALJ's decision is supported by substantial evidence given the absence of documented complaints or treatment for back pain after Plaintiff's alleged disability onset date.

When Plaintiff submitted his application for benefits, he alleged a disability onset date of January 29, 2020, and identified atrial fibrillation, hypertension, and a myocardial infarction (heart attack) as the conditions that limited his ability to work. *Id*. at 266. As a result, nearly all of the medical evidence in the record—aside from the 2016 MRI—postdates the alleged onset date. The Court summarizes the relevant medical history below, not as it was presented in the ALJ's decision, but as it relates to the issues raised in this appeal.

As noted above, on October 25, 2016, Plaintiff presented to the emergency room with complaints of back pain following the lifting of heavy objects. *Id*. at 624. He was admitted to the hospital for several days and diagnosed with lumbar muscle pain, a lumbar sprain, and intractable low back pain. *Id*. at 624-77. An X-ray revealed degeneration at the L5-S1 disc, *id*. at 674, and an MRI showed degeneration of the L4-5 and L5-S1 discs, a small broad-based central disc protrusion at L5-S1, multilevel facet arthropathy resulting in bilateral neuroforaminal narrowing at L5-S1 (without central spinal stenosis), and a distended urinary bladder, *id*. at 674-75. During his hospitalization, Plaintiff was treated with pain medication, muscle relaxants, and physical therapy. *Id*. at 663. His medications were adjusted over time. *Id*. By the time of his discharge on November 2, 2016, Plaintiff reported feeling somewhat better and stated that he was ready to return home. *Id*.

In September and December 2021, Plaintiff sought medical care to establish treatment for cardiovascular conditions. *Id*. at 353-85. At neither visit did Plaintiff report any back pain, and he specifically denied experiencing back pain during the December 2021 appointment. *Id*. at 376.

In April 2022, Plaintiff returned for follow-up and continued medical management with the same provider he saw in September and December 2021. *Id*. at 464-67. At that visit, he reported experiencing foot pain over the past couple of months, primarily at the base of his metatarsals. *Id*. at 464. The physician recommended shoe

8

inserts and noted that a referral to podiatry would be considered if the symptoms persisted. *Id*. at 467. Plaintiff did not report any back pain during this visit.

In July 2022, Plaintiff sought medical care for a left hip injury sustained after falling while bending over the month prior. *Id*. at 468. On examination, the provider noted that medial and lateral deviation of the hip beyond 45 degrees caused pain, neurovascular function was intact distally, straight leg raise was negative, and Plaintiff's gait was mildly antalgic. *Id*. at 469. An X-ray of the hip revealed no abnormalities. *Id*. at 471. Plaintiff returned in August 2022 for follow-up, reporting that his hip pain had not improved despite physical therapy and the use of meloxicam and gabapentin. *Id*. He was advised to continue physical therapy and take ibuprofen, gabapentin, and cyclobenzaprine, with an MRI of the hip to be considered if symptoms persisted. *Id*. at 473. Notably, Plaintiff did not report any back pain at either visit.

In February 2023, Plaintiff sought follow-up care with his cardiac provider. *Id*. at 572. He reported no back complaints, and the musculoskeletal examination revealed a normal gait and full range of motion. *Id*. at 573.

In April 2023, during his initial visit as a new patient for a hiatal hernia, Plaintiff again reported no back complaints. *Id*. at 681-82. The musculoskeletal examination was negative for back pain and showed a normal range of motion. *Id*. at 681-84.

9

### B. Opinions of State Agency Reviewing Physicians Are Not "Stale"

Plaintiff first argues that the ALJ's RFC determination is unsupported by substantial evidence because it relies on opinions of state agency reviewing physicians issued before the 2016 MRI was added to the record. *Doc. 12* at 7-9.[2] Plaintiff asserts that the opinions are therefore "stale" because they do not consider the MRI findings documenting his lower back problems. *Id*. While the Court acknowledges that the Tenth Circuit has criticized reliance on "patently stale" opinions of state agency consulting physicians as "troubling," *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012), it disagrees that the opinions at issue are "stale" in this context.

A medical opinion is generally considered "stale" when it fails to account for obvious and material changes in the claimant's medical condition that occur **after** the opinion is rendered, as shown by new medical evidence such as diagnostic findings or significant worsening of symptoms. *Chapo*, 682 F.3d at 1292-93 (finding an examining consultant's opinion stale where later diagnostic imaging and treatment records showed obvious and material changes in the claimant's condition arising after the opinion was rendered)[3]; *Reeder v. Colvin*, 2014 WL 4538060, at *2-6 (D. Kan. Sept. 11, 2014) (finding an examining consultant's opinion stale where it was issued 41 months

---

[2] The 2016 MRI was added to the record in October 2023, several months after the state agency reviewing physicians whose opinions Plaintiff challenges last evaluated the record and issued their assessments. AR at 61-78, 678.

[3] In *Chapo*, the Tenth Circuit noted its concern with the dated nature of the evidence but declined to reverse on that basis, instead advising the ALJ on remand to obtain an updated report or examination. *Chapo*, 682 F.3d at 1293.

before the ALJ's decision and failed to address numerous new diagnoses and treatment records developed afterward); *Hudgins v. Colvin*, 2014 WL 2504515, at *3, (W.D. Okla. June 3, 2014) (acknowledging that nonexamining physicians' opinions were stale because they relied on evidence from 2007, even though the claimant's post-September 2006 disability-onset medical records continued through 2010).  One court has also found staleness where unreviewed medical records predated the opinion but postdated the disability onset date, making them highly relevant to the claimant's condition.  *Estes v. Berryhill*, 2018 WL 7813742, at *3 (N.D. Okla. Sept. 28, 2018) (finding a nonexamining physician's opinion stale where the physician did not review hospitalization records from after the claimant's disability onset date that were highly relevant to assessing the claimant's condition).

    Here, the circumstances are different.  In *Chapo*, *Reeder*, and *Hudgins*, the opinions were found stale because they did not consider later-developed medical records showing significant changes in the claimant's condition.  The 2016 MRI here, however, reflects no such post-opinion change—it was performed years before the state agency physicians issued their opinions.  Likewise, in *Estes*, the unreviewed records arose after the claimant's disability onset date and thus bore directly on the period at issue, even though they predated the opinion.  By contrast, the MRI in this case predates both Plaintiff's alleged disability onset date by over three years and the state agency physicians' opinions.  A medical record that both predates the alleged onset date and

11

the physicians' reviews—particularly when it does not relate to the impairments Plaintiff identified as the basis for his disability claim—cannot reasonably be viewed as the type of new, post-onset development that would be expected to significantly change a medical source's assessment if it had been available for review. Accordingly, because the 2016 MRI reflects neither a post-onset development nor a post-opinion change, the state agency reviewing physicians' opinions are not "stale."

Because Plaintiff challenges the ALJ's reliance on the state agency reviewing physicians' opinions solely on the basis of staleness, and that argument is without merit, the Court need not address the ALJ's reliance on those opinions further. Plaintiff has therefore failed to demonstrate any error in the ALJ's consideration of the state agency reviewing physicians' opinions.

### C. The ALJ's Choice Not to Explicitly Discuss the 2016 MRI Does Not Warrant Remand

Plaintiff next argues that the ALJ erred by failing to "fully consider" the 2016 MRI, which the reviewing physicians did not have access to, and that the decision gives "no assurance" that the ALJ was even aware of it. *Doc. 12* at 9-10. This argument conflates the ALJ's duty to consider all the evidence with a supposed obligation to expressly discuss each item of evidence. As noted above, the decision must reflect that the ALJ considered all the evidence, but the ALJ is not required to discuss every piece of evidence. *Clifton*, 79 F.3d at 1009-10. Rather, the ALJ must discuss any uncontroverted

evidence they chose not to rely upon, as well as any significantly probative evidence they reject. *Id*.

The ALJ expressly stated, multiple times, that he "carefully considered the entire record," which necessarily included the 2016 MRI. Where, as here, the ALJ indicates they have considered all the evidence, this Court takes the ALJ "at [his] word." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 1007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.")).

Next, substantial evidence supports the conclusion that the omission of an explicit discussion of the 2016 MRI does not require reversal, as the record reflects that the MRI is both controverted and not significantly probative as to Plaintiff's functional limitations after his alleged disability onset date. First, the record supports that any functional limitations stemming from the 2016 MRI findings are controverted, as the post-onset medical records contain no complaints, treatment, or clinical findings related to back pain. *See supra* Section IV, Subsection A. Although Plaintiff asserts that he did not seek treatment for his back because "there isn't anything [he] can do," the record remains devoid of any reports of back pain—even during examinations for conditions he now claims are related to his lower back. *See id.*; *Doc. 24* at 3. This absence of corroborating evidence undermines any assertion that the MRI established disabling

13

back limitations after the alleged onset date. *See Chambers v. Barnhart*, 389 F.3d 1139, 1144 (10th Cir. 2004) (finding that the mere presence of a condition with no vocationally relevant impact is a patently inadequate basis for a disability claim). Second, the record supports the conclusion that the MRI is not significantly probative, as it predates the alleged onset date by more than three years, concerns an impairment unrelated to those Plaintiff identified as the basis of his disability claim, and is unsupported by any evidence of related functional limitations during the relevant period. While the ALJ is obligated to consider the entire record, including evidence predating the onset date, such evidence must still bear on the claimant's functioning during the relevant period— and the record supports that this MRI does not. The fact that Plaintiff's disability claim is based on cardiac impairments further supports the ALJ's conclusion that the MRI findings were of limited relevance. Moreover, the absence of any reported back pain or related limitations in the post-onset medical records further indicates that the MRI findings were insufficient, on their own, to establish that Plaintiff's back impairments had a significant impact on his functioning during the relevant period. Although Plaintiff complained of back pain at the November 21, 2023, hearing before the ALJ, the ALJ acknowledged this testimony and expressly accounted for it in formulating an RFC that addressed his "subjective reporting of back pain." AR at 23, 41, 46, 49-50, 52. The Court does not find that Plaintiff's self-reported symptoms of back pain overwhelm the

14

medical evidence on which the ALJ relied, and the Court will not second guess the ALJ's weighing of the medical and symptom evidence. *Bowman*, 511 F.3d at 1272.

Because the ALJ considered all of the evidence, supported his findings with an explanation of the evidence upon which he did rely, and that evidence is not "overwhelmed by other evidence in the record," *Grogan*, 399 F.3d at 1261-62 (citations omitted), the ALJ's findings are supported by substantial evidence and remand is not warranted.

V. **CONCLUSION**

For the foregoing reasons, the Court finds no reversible error in the ALJ's decision. Therefore, the Court DENIES Plaintiff's Memorandum in Support of Reversal and Remand (*doc. 12*) and AFFIRMS the judgment of the SSA.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**